# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANITA M. JONES-COLEMAN, | : | Case No. 3:19-cv-292 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## DECISION AND ENTRY

**I.　　Introduction**

In September 2016, Plaintiff Anita M. Jones-Coleman filed an application for Disability Insurance Benefits, Supplemental Security Income, and a period of disability benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) Stuart Adkins concluded Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed an action before this Court, seeking a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. No. 7), the Commissioner's Memorandum in Opposition (Doc. No. 10), and the administrative record (Doc. No. 6).

**II.     Background**

Plaintiff asserts that she has been under a disability since January 30, 2015.  On the alleged disability onset date, she was fifty-five years old.  At that time, Plaintiff was considered a "person of advanced age" under Social Security Regulations.  *See* § 404.1563(e); 20 C.F.R. § 416.963(e).[1]  She has a bachelor's degree.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, Page ID 44-54), Plaintiff's Statement of Errors (Doc. No. 7), and the Commissioner's Memorandum in Opposition (Doc. No. 10).  Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

**III.    Standard of Review**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability," as defined by the Social Security Act, has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid jo – i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. §§

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the legal criteria – may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing

3

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### IV.     The ALJ's Decision

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since her alleged disability onset date, January 30, 2015.

Step 2: She has the severe impairments of renal cell carcinoma, degenerative disc disease of the lumbar and cervical spine, obesity, fibromyalgia, hypertension, chronic obstructive pulmonary disease ("COPD"), osteoarthritis of the bilateral knees, asthma, gastroesophageal reflux disease ("GERD"), carpal tunnel syndrome of the right upper extremity, cubital tunnel syndrome of the right upper extremity, chronic urticarial, hypothyroidism, and bursitis of the right shoulder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work" subject to the following limitations: (1) can lift 10 pounds occasionally and 10 pounds frequently; (2) can stand and/or walk for about 2 hours and sit for about 6 hours in an 8-hour workday; (3) would be permitted to alternate between sitting and standing every 15 minutes with a brief position change while at the work station; (4) never climb ladders, ropes or scaffolds; (5) occasionally climb ramps and stairs; (6) occasionally stoop, kneel, crouch, and crawl; (6) frequently balance; (7) frequently handle, finger, and feel with the right upper extremity, and; (8) should avoid unprotected heights and dangerous machinery.

Step 4: Plaintiff is capable of performing past relevant work.

(Doc. No. 6-2, PageID 46-54). Based on these findings, the Administrative Law Judge concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 54.

V.  **Discussion**

In her Statement of Errors, Plaintiff alleges that error occurred when the Administrative Law Judge afforded Dr. Anthony Jacob's treating source opinion only "little weight." (Doc. No. 7, PageID 1469). The Commissioner disagrees and maintains that the ALJ's decision is supported by substantial evidence.

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions, and "[k]ey among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. Controlling weight should be afforded to a treating-source opinion when (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If a treating source's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). Yet, while "the regulations instruct an ALJ to consider these factors, they expressly require only that the

5

ALJ's decisions include 'good reasons … for the weight…give[n] [to the] treating source's opinion' – not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 41 F. App'x 802, 804 (6th Cir. 2011). This "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

In alleging that the decision is not supported by substantial evidence, Plaintiff asserts that the ALJ "failed to properly evaluate the medical evidence," and "failed to follow the treating-physician standard." (Doc. No. 7, PageID 1469). Yet, in so arguing, Plaintiff does little aside from merely reciting Dr. Jacob's opinions and the ALJ's findings. *Id.* at 1469-70. The culmination of her argument appears to be when she acknowledges that the ALJ "does give a couple of citations to inconsistencies in the records, [but] he does not fully evaluate the opinion as required under the treating physician rule." *Id.* at 1470.

A careful review of the record demonstrates that no error occurred. First and foremost, the treating physician rule was satisfied. To justify denying Dr. Jacob's opinion controlling or deferential weight, the ALJ found that the opinion was not well-supported by objective evidence, including the physical examinations of record. (Doc No. 6-2, PageID 53). For instance, the ALJ noted that while "Dr. Jacob concluded [Plaintiff could] only use her hands for manipulating objects 10-15% of the time," Plaintiff's physical examination that occurred one week after the opinion was rendered showed that Plaintiff "maintained full 5/5 grip strength" despite her impairments. *Id.* Other objective medical evidence demonstrated that Plaintiff had "adequate pinch strength and was able to grasp

and manipulate with both hands." *Id.* Likewise, physical examination also demonstrated that Plaintiff had intact sensation to even light touch. *Id.*

He also addressed whether the opinion was consistent with other substantial evidence in the record. Finding that the opinion was inconsistent, the ALJ cited to specific inconsistencies between the opinion and the objective medical evidence. For example, the ALJ pointed to objective treatment notes that showed Plaintiff could focus on tasks. *Id.* This proved inconsistent with Dr. Jacob's opinion that Plaintiff had a "marked" difficulty with concentration. *Id.* Similarly, the ALJ noted that Dr. Jacob found Plaintiff capable of "low stress work." *Id.* And while he surmised that she had "some mental health limitations," the ALJ noted that "[Plaintiff] consistently denied symptoms of anxiety and depression to her providers and refused medication." *Id.*

Plaintiff seems to argue cursorily that Dr. Jacob's opinion should have been afforded more weight based on the length of the treatment relationship. However, contrary to Plaintiff's position, this factor, along with the limited extent of treatment, further supports the ALJ's determination. As reflected in the record, Dr. Jacob had seen Plaintiff for only approximately four months before he rendered his opinion, and during that four-month period he saw Plaintiff only three or four times. (Doc. No. 6-10, PageID 1441-47).

Likewise, Dr. Jacob's treatment notes do not reflect a significant extent of treatment and also do not support his opined limitations. For instance, after the second encounter, Dr. Jacob recommended that Plaintiff continue with her regular medication and home therapy treatment, and follow up in three months' time. *Id.* at 1445. During two of his encounters with Plaintiff, Dr. Jacob's treatment notes indicate that Plaintiff's strength was

5/5 on physical exam. *Id.* at 1445-46. At the third visit, Dr. Jacob did order an EMG nerve conduction study which confirmed Plaintiff suffered from carpel and cubital tunnel syndromes in the upper right extremity, but the EMG indicated no cervical radiculopathy was present. *Id.* at 1446-47.

The other medical opinion evidence further illustrates that no error was committed in assessing Dr. Jacob's opinion. For example, the ALJ afforded "significant weight" to the opinion of consultative examiner Dr. Aivars Viatols. On examination with Dr. Viatols, Plaintiff "was able to grasp and manipulate with both hands satisfactorily," and her "pinch and grip [were] intact and equal." (Doc. No. 6-7, PageID 679). Her muscle strength was 5/5. *Id.* at 678. In reference to Dr. Viatols' findings, the ALJ noted that Plaintiff did have a positive straight leg raise on the right, but otherwise "had full muscle strength, normal reflexes, and normal sensation to light touch." (Doc. No. 6-2, PageID 53). Dr. Viatols found Plaintiff was capable of sedentary work. (Doc. No. 6-7, PageID 680).

Additionally, the ALJ reasonably afforded less weight to the opinions from state agency reviewing physicians Drs. Mehr Siddiqui, Anton Freihofner, and Jay Shaw. (Doc. No. 6-2, PageID 52-53). While he found these opinions to be "somewhat consistent" with the overall objective medical evidence and afforded them "partial weight," the ALJ declined to afford more weight to these opinions as he recognized that the relevant medical evidence suggested additional limitations, such as greater lifting restrictions and a sit-stand option, in accordance with Plaintiff's testimony. *Id.* at 52-53.

The decision demonstrates that the ALJ meaningfully assessed Dr. Jacob's opinion in light of the objective medical evidence. Specific reasons were provided in affording Dr.

8

Jacob's opinion "little weight," and these reasons were supported by substantial evidence. As a result, Plaintiff's Statement of Errors is without merit.

**IT THEREFORE IS ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed;
2. The case is terminated on the Court's docket.

March 11, 2021                                         *s/Sharon L. Ovington*
                                                       Sharon L. Ovington
                                                       United States Magistrate Judge